# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20264

DAVID ALLEN,

Plaintiff - Appellee

v.

A. H. CISNEROS; J. MONTELONGO,

Defendants - Appellants

United States Court of Appeals
Fifth Circuit

**FILED**

March 9, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas

Before KING, JOLLY, and PRADO, Circuit Judges.

PER CURIAM:

Plaintiff–Appellee David Allen participated in several demonstrations throughout the City of Houston that led to his detention and arrest by police officers, including Defendants–Appellants Aaron Cisneros and Juan Montelongo. Allen brought claims under 42 U.S.C. § 1983 against Sergeant Cisneros and Officer Montelongo, among others, alleging that the officers violated his constitutional rights. The district court denied the officers' motion for summary judgment on qualified immunity grounds, and the officers appealed. Because we hold that the officers are entitled to qualified immunity, we REVERSE the district court's order denying summary judgment.

No. 15-20264

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Since at least 2010, Plaintiff–Appellee David Allen has regularly engaged in street preaching throughout Houston, Texas, sounding a shofar as part of his preaching.[1]  After Allen's activities led to his detention and arrest by police officers on multiple occasions, he filed a complaint in the United States District Court for the Southern District of Texas, alleging numerous violations of his constitutional rights arising out of several encounters with police officers.  Two encounters are at issue in this appeal: Allen's encounter with Officer Montelongo on October 31, 2011, and his encounter with Sergeant Cisneros on January 14, 2012.

### A. Incident Involving Officer Montelongo

On October 31, 2011, Allen was street preaching at a bus stop in Houston with David Stokes—another street preacher—and two other individuals. Officer Montelongo arrived on the scene in response to a disturbance call.  He possessed a template that measured whether signs and objects used by demonstrators complied with Houston Ordinance § 28-33,[2] which describes the

---

[1] A shofar is a trumpet-like instrument made from a ram's horn.  Shofars are commonly used in Judaism to mark the holidays of Rosh Hashanah and Yom Kippur.  Joseph Berger, *In Brooklyn, Horn Lessons by a Rabbi Ring Out*, N.Y. Times, Sept. 29, 2011, at A24. Sergeant Cisneros and Officer Montelongo did not know of the shofar's religious significance, and the parties do not dispute on appeal that Defendants are entitled to qualified immunity for the seizure of Allen's shofar.

[2] The ordinance provides that:

(a) No person shall carry or possess while participating in any demonstration, rally, picket line or public assembly, any stick, board, pole, stave, rod, plank, pipe, stud, cane, staff, slat, or similar object unless that object conforms to the following specifications:
    (1) All objects which are generally rectangular in shape shall not exceed one-fourth inch in thickness and two inches in width.
    (2) All objects which are not generally rectangular in shape shall not exceed three-quarters inch in their thickest dimension.
    (3) All objects must be constructed of wood, wood products, or other cellulose materials.

No. 15-20264

items that may be carried at a demonstration.  He measured the signs and informed Stokes that the signs did not comply with the ordinance.  Officer Montelongo also informed Allen that he could not have his shofar, which measured approximately thirty-seven inches long and six inches in width, and which Allen possessed throughout the entire incident.  As Officer Montelongo and Stokes argued about whether the signs complied with the ordinance, Officer Montelongo's supervising officer arrived.  While the officers discussed the situation, Stokes approached the officers, and the supervising officer detained Stokes.  According to Officer Montelongo, Allen entered into the oncoming street traffic while Stokes was being detained.  Officer Montelongo pulled Allen back onto the sidewalk, but Allen resisted and fell, leading to Officer Montelongo and another officer handcuffing Allen for the officers' and Allen's safety.  According to Allen, however, he never entered or tried to enter the street; instead, the officers detained and handcuffed Allen as he attempted to use his cell phone to videotape Stokes' treatment by the officers.  The parties agree that Allen was placed in the back of a police car after being handcuffed.  Officer Montelongo ultimately issued citations to Stokes and Allen for violating the city ordinance, and confiscated the signs and Allen's shofar.[3]

**B. Incident Involving Sergeant Cisneros**

On January 14, 2012, Allen and Stokes protested in downtown Houston on the route of the Houston Marathon.  Allen had his shofar and Stokes had several signs displaying controversial messages.  A race official approached, stood in front of one of the signs, and exchanged words with Stokes.  A police officer spoke with Stokes, and subsequently called for assistance because of

---

Houston, Tex., Code of Ordinances ch. 28, art. 1, § 33.

[3] The citation was later dismissed because it had been incorrectly completed.

"two extremely uncooperative males" that were causing a disruption along the race route.

Upon arriving at the scene, Sergeant Cisneros spoke with the other officer and the race official about the disruption. Sergeant Cisneros approached Stokes and Allen and directed them to move back from the edge of the race route, but Stokes verbally refused to move. Sergeant Cisneros told Stokes "[c]ome on with me" and escorted Stokes towards Sergeant Cisneros' police car, which was parked on a street blocked off for the race. As Sergeant Cisneros detained Stokes, Allen videotaped the encounter, following Sergeant Cisneros and "com[ing] up behind him." Sergeant Cisneros turned and told Allen, "I'm going to tell you. I do not want you near my police car. I'm going to order you to go away. If you do not go away, I'm going to put you in jail for interfering with a police investigation." Allen began walking backwards while continuing to videotape. Sergeant Cisneros then told Allen that "[i]f we are going to play the step-by-step game, I'm going to put you in the backseat of the car also." Allen verbally protested, claiming that he was on a public sidewalk and asking what he was doing wrong. Sergeant Cisneros confiscated the video camera from Allen, frisked him, and placed him in the backseat of the patrol car with Stokes.

After checking Stokes' and Allen's identification, Sergeant Cisneros released both men, returning their personal belongings. Allen began walking towards Sergeant Cisneros' patrol car with the video camera. Sergeant Cisneros contends that he warned Allen to stay out of the street, although Allen disputes that such a warning occurred. After Allen entered the street, Sergeant Cisneros arrested him. Sergeant Cisneros issued Allen a citation for failure to obey a lawful order of a police officer directing traffic and for violating

No. 15-20264

Houston Ordinance § 28-33 by possessing a staff while participating in a demonstration.[4]

### C. Procedural History

On May 15, 2013, Allen filed his complaint seeking relief under 42 U.S.C. § 1983. Allen alleged that Defendants seized him in retaliation for his exercise of his freedom of speech, in violation of the First Amendment, and that the seizures were without probable cause or other lawful authority, in violation of the Fourth Amendment.[5] Defendants moved for summary judgment, asserting that they were entitled to qualified immunity. The magistrate judge issued a memorandum and recommendation, advising that the district judge deny summary judgment on qualified immunity grounds as to the seizures of Allen by both Defendants.[6] As to the incident involving Officer Montelongo, the magistrate judge found that there was a genuine factual dispute of whether Allen had entered the street when he was detained by Officer Montelongo. Similarly, the magistrate judge found that there was a genuine factual dispute of whether Allen complied with Sergeant Cisneros' orders and whether Allen remained bound by Sergeant Cisneros' prior orders. Both Defendants filed objections, but the district court adopted the magistrate judge's memorandum and recommendation in its entirety. Defendants timely appealed the denial of their summary judgment motion based on qualified immunity.

---

[4] The charges were later dismissed after Sergeant Cisneros missed Allen's court date.

[5] Allen also brought claims against the chief of the Houston Police Department, Charles McClelland, and the City of Houston, but the district court ultimately dismissed those claims.

[6] The magistrate judge also advised that the district court grant summary judgment on qualified immunity grounds as to the seizure of Allen's shofar by both officers, and the district court dismissed those claims relating to the seizures of the shofar.

No. 15-20264

## II.    STANDARD OF REVIEW

An order denying summary judgment on qualified immunity "is a collateral order subject to immediate appeal." *Brauner v. Coody*, 793 F.3d 493, 497 (5th Cir. 2015).  However, "[t]his court has jurisdiction over such an order only 'to the extent that the district court's order turns on an issue of law.'" *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014) (quoting *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010)).  Accordingly, we lack jurisdiction to review the *genuineness* of a fact issue but have jurisdiction insofar as the interlocutory appeal "challenges the *materiality* of [the] factual issues." *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 490 (5th Cir. 2001).  We review *de novo* the district court's conclusions regarding the materiality of the facts, *Gibson*, 773 F.3d at 666, "consider[ing] only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment," *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc).  "Where factual disputes exist in an interlocutory appeal asserting qualified immunity, we accept the plaintiffs' version of the facts as true." *Id.*

## III.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  A plaintiff can overcome a qualified immunity defense by showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2080 (2011)

6

(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Allen contends that Officer Montelongo and Sergeant Cisneros unlawfully seized him in retaliation for exercising his freedom of speech, in violation of the First and Fourth Amendments.  However, because the genuine disputes identified by the district court are not material and Allen has failed to show that either officer violated his constitutional rights, Defendants are entitled to qualified immunity.

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  However, a retaliation claim is only applicable "when nonretaliatory grounds are in fact insufficient to provoke the adverse consequences." *Id.*  As a result, even where a citizen believes that he has been subject to a retaliatory detention or arrest, if there was reasonable suspicion or probable cause for an officer to seize the citizen, "the objectives of law enforcement take primacy over the citizen's right to avoid retaliation." *Keenan v. Tejeda*, 290 F.3d 252, 261–62 (5th Cir. 2002); *see also Mullenix*, 136 S. Ct. at 308 ("A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012))).

Under the Fourth Amendment, "[p]olice officers may briefly detain individuals on the street, even though there is no probable cause to arrest them, if they have a reasonable suspicion that criminal activity is afoot." *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994).  Reasonable suspicion exists if there are "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [a detention]." *Terry v. Ohio*, 392 U.S. 1, 21 (1968).  However, determining reasonableness is an objective inquiry where "[w]e ask whether 'the circumstances, viewed objectively, justify [the challenged] action.'" *Ashcroft*,

131 S. Ct. at 2080 (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)). Accordingly, "[t]he Fourth Amendment requires only some minimum level of objective justification for the officers' actions—but more than a hunch—measured in light of the totality of the circumstances," *Michelletti*, 13 F.3d at 840, considering the facts available to the officer at the time of the detention, *Davila v. United States*, 713 F.3d 248, 258 (5th Cir. 2013).

### A. Officer Montelongo

First, the district court erred in finding that Officer Montelongo was not entitled to qualified immunity because the genuine factual dispute identified by the court—whether Allen had entered the roadway—is not material to the determination of qualified immunity.  Here, Allen's possession of his shofar independently provided reasonable suspicion for his detention.  The city ordinance specifically prohibited "carry[ing] or possess[ing] while participating in any demonstration" objects that "exceed three-quarters inch in their thickest dimension."  Houston, Tex., Code of Ordinances ch. 28, art. 1, § 33.  The shofar, which was approximately six inches in width, clearly violated the ordinance. Moreover, Allen refused to relinquish the shofar to Officer Montelongo and continued to possess it until he was detained.  Based on the totality of the circumstances, these facts provide a "minimum level of objective justification" for the detention of Allen by Officer Montelongo.  *Michelletti*, 13 F.3d at 840. Officer Montelongo therefore did not violate Allen's Fourth Amendment rights when he lawfully detained Allen for carrying or possessing the shofar in violation of the city ordinance.  *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").  Furthermore, Officer Montelongo did not violate Allen's First Amendment rights because Allen's possession of the shofar provided a legal, non-retaliatory ground for Allen's

detention. *Keenan*, 290 F.3d at 261–62. Thus, the genuine factual dispute regarding whether Allen entered the roadway was not material to determining whether Allen's constitutional rights were violated. *See Gibson*, 773 F.3d at 666. The district court therefore erred in holding that Officer Montelongo is not entitled to qualified immunity.

### B. Sergeant Cisneros

Second, the district court also erred in denying qualified immunity to Sergeant Cisneros. Neither of the remaining factual disputes identified by the district court—whether Allen complied with Sergeant Cisneros' orders and whether Allen remained bound by Sergeant Cisneros' prior orders—is material for determining whether Sergeant Cisneros is entitled to qualified immunity for his detention and subsequent arrest of Allen.

Sergeant Cisneros had a lawful reason for detaining Allen independent of any potential failure to comply by Allen. During an investigation, police officers may "take such steps as [a]re reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Campbell*, 178 F.3d 345, 348–49 (5th Cir. 1999) (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)). We only consider, on a case-by-case basis, "whether the police were unreasonable in failing to use less intrusive procedures to conduct their investigation safely." *Id.* at 349 (quoting *United States v. Sanders*, 994 F.2d 200, 206–07 (5th Cir. 1993)). Here, while Sergeant Cisneros was in the process of detaining Stokes, Allen followed and "came up behind" Sergeant Cisneros, prompting Cisneros to order Allen to back away. Based on those undisputed facts, we cannot say that Sergeant Cisneros' detention of Allen was an unreasonable procedure for protecting the officer's safety and maintaining the status quo during the detention of Stokes. Thus,

whether Allen complied with Sergeant Cisneros' order is immaterial because Sergeant Cisneros had an independent basis for lawfully detaining Allen.[7]

Sergeant Cisneros also had a lawful reason for arresting Allen unrelated to the genuine factual disputes. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *see also Cole v. Carson*, 802 F.3d 752, 764 (5th Cir. 2015) (noting that in order to make out a Fourth Amendment claim for warrantless arrests, the Supreme Court has made clear that "the [officers] must not be aware of facts constituting probable cause to arrest or detain the person for *any* crime."). Allen possessed and carried his shofar while demonstrating with Stokes, a demonstration that ultimately led to Sergeant Cisneros' involvement. And as previously discussed, the undisputed evidence shows that the shofar violated the Houston ordinance. *See Atwater*, 532 U.S. at 354 ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). Sergeant Cisneros therefore had probable cause to arrest Allen unrelated to the genuine factual disputes identified by the district court.[8] Those factual disputes are therefore not material, and Sergeant Cisneros is entitled to qualified immunity.

## IV.    CONCLUSION

For the foregoing reasons, we REVERSE the district court's order denying summary judgment on Allen's § 1983 claims and REMAND for entry

---

[7] Allen also possessed his shofar during this incident involving Sergeant Cisneros, similar to the incident involving Officer Montelongo.

[8] Moreover, because Sergeant Cisneros had non-retaliatory grounds for his detention and subsequent arrest of Allen, he did not violate Allen's First Amendment rights. *See Hartman*, 547 U.S. at 256.

No. 15-20264

of judgment in favor of Officer Montelongo and Sergeant Cisneros.  Allen shall bear the costs of this appeal.