# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-40736
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

December 19, 2019

Lyle W. Cayce
Clerk

JOE ROBLES; ELVIRA ROBLES,

Plaintiffs–Appellants,

v.

DEPUTY ANTHONY CIARLETTA, Individually; MATTHEW CAMPBELL,
Individually; ARANSAS COUNTY, TEXAS,

Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:15-CV-495

Before OWEN, Chief Judge, and DENNIS and CLEMENT, Circuit Judges.

PER CURIAM:*

Joe and Elvira Robles appeal the final judgment entered against them
in their suit against Aransas County and Deputies Matthew Campbell and
Anthony Ciarletta arising from Joe Robles's arrest. The Robles claimed that
their rights under the First, Fourth, Fifth, and Fourteenth Amendments of the
Constitution had been violated. They also brought a cause of action for assault

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 18-40736

and battery under state law.  In piecemeal fashion, the district court dismissed all of the Robles' claims.  The Robles now challenge the dismissal of the First, Fourth, and Fourteenth Amendment claims.  We affirm.

## I

This dispute arises from the tumultuous landlord-tenant relationship between Joe Robles (to whom we will refer as "Robles" unless otherwise indicated) and Andrea LaRue.  The Robles owned a two-story house on their ten-acre tract of land in Aransas County.  The Robles' son rented rooms in the house to several tenants, including LaRue.  In December 2013, Robles began managing the property in place of his son.  Robles requested that LaRue and one other tenant move.  The other tenant vacated the premises, but LaRue did not.

On December 21, 2013, someone named Andrea, using LaRue's phone number, called the police claiming that the "landlord came and threatened her."  Robles claims that a different tenant, Andra, made the call on December 21.  In any event, Deputy Matthew Campbell responded to the call and performed a status check.

On December 25, 2013, Robles entered the rental property and noticed that fifty dollars and a cable box were missing from his son's room.  Robles called the Aransas County Sheriff's Office to report a theft of those items.  Campbell responded to the call.  According to the Robles, Campbell told them that they did not have enough information to file a complaint against LaRue.  When the Robles pressed him on the issue, Campbell allegedly threatened to put the Robles in jail if he was called back to the property.  According to Elvira Robles, Campbell's words were, "If I'm called back again here, I'm going to put you all in jail, even your wife."

On December 31, 2013, LaRue began loading her belongings into a U-Haul truck she brought to the property.  Fearful that she was taking more

than just her things, Robles approached the property. When he entered the upstairs of the house, LaRue immediately called the police, claiming that Robles attempted to push her over a ledge. Once again, Campbell responded to the call. He wore a body camera that captured most of what happened. Campbell entered the house looking for Robles. He heard LaRue crying and saw a broken flower pot on the floor of the home's atrium below the interior ledge where Robles allegedly tried to push LaRue. LaRue told Campbell that Robles "tried to throw [her] over the side." LaRue was referring to the second floor hallway, which has a wall that reaches about waist height but is open to the first floor. Campbell proceeded upstairs with his pistol drawn, but neither LaRue nor her nephew, who was also present, knew where Robles had gone. Campbell went through a back door onto a second-floor deck that had stairs leading to the ground.

Once outside, Campbell saw Robles on the ground. Campbell immediately instructed Robles to take his hands out of his pockets. The video does not indicate whether Robles's hands were in fact in his pockets at that time. Campbell proceeded to order Robles to turn around. In total, Campbell ordered Robles to turn around six times as he walked down the stairway. Robles did not comply and instead took a step toward Campbell while retorting, "don't be hollering at me." Campbell, who until this point had his pistol trained on Robles, holstered his weapon and jumped to the ground. Once on the ground, Campbell twisted Robles's arm and took him to the ground. As Campbell attempted to handcuff Robles, Campbell shouted, "quit trying to kick me, quit resisting." The video did not capture whether Robles was kicking Campbell. After Robles was in handcuffs, other deputies arrived at the scene, including Deputy Anthony Ciarletta. Ciarletta conducted interviews with LaRue and her nephew and noted his findings in his police report.

3

No. 18-40736

After the incident, the Robles alleged that they asked a representative of Aransas County to conduct an internal investigation. Robles also alleged that he complained in person to the Aransas County Sheriff and Aransas County Judge, but no investigation ever occurred.

The Robles sued Campbell, Ciarletta, and Aransas County (Defendants) bringing claims for: First Amendment retaliation against Campbell, excessive force and false arrest under the Fourth Amendment against Campbell, due process violations under the Fifth and Fourteenth Amendments against Campbell and Ciarletta, and assault and battery against Campbell under state law. The Robles also alleged that Aransas County is responsible for the claims against Campbell and Ciarletta due to its customs, policies, practices, and procedures.

Defendants moved to dismiss the Robles' claims for failure to state a claim. In ruling on the motion, the district court considered Campbell's body camera video and Ciarletta's police report.[1] At the hearing on the motion, the court dismissed the Robles' assault and battery claims. In a written order following the hearing, the district court dismissed the Robles' false arrest claim, Fifth Amendment claims, and Fourteenth Amendment claim against Ciarletta.[2] The district court also dismissed without prejudice the Robles' claims against Aransas County and their Fourteenth Amendment claim against Campbell.[3] The Robles subsequently dropped their Fourteenth Amendment claim against Campbell. After the Robles amended their

---

[1] *Robles v. Aransas Cty. Sheriff's Dep't*, No. 2:15-CV-495, 2016 WL 4159752, at *3-4 (S.D. Tex. Aug. 5, 2016) [hereinafter *First Motion to Dismiss Order*].

[2] *First Motion to Dismiss Order*, 2016 WL 4159752, at *5, *7.

[3] *Id.* at *8.

No. 18-40736

complaint, the district court dismissed the claims against Aransas County, leaving only the excessive force and First Amendment retaliation claims.[4]

A little over a year later, Campbell moved for summary judgment on the Robles' excessive force and First Amendment claims.  The district court determined that Campbell was entitled to qualified immunity and dismissed those claims.[5]  The Robles sought reconsideration, which the district court denied.  The Robles appeal.

## II

The Robles argue the district court erred by granting summary judgment on the excessive force claim and the First Amendment claims.  The district court determined that Campbell was entitled to qualified immunity on those claims.[6]  We review the grant of summary judgment de novo.[7]  "When a defendant pleads qualified immunity as an affirmative defense and moves for summary judgment on that basis, a court must decide (1) whether the facts alleged or shown by the plaintiff made out a violation of a constitutional right, and (2) whether that right was 'clearly established' at the time of the defendant's alleged misconduct."[8]  The court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[9]  "[O]nce a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity."[10]  Accordingly, the Robles

---

[4] *Robles v. Aransas Cty. Sheriff's Dep't*, No. 2:15-CV-00495, 2016 WL 7426402, at *5 (S.D. Tex. Dec. 23, 2016).

[5] *Robles v. Aransas Cty. Sheriff's Dep't*, No. 2:15-CV-495, 2018 WL 1932742, at *5-7 (S.D. Tex. Apr. 23, 2018) [hereinafter *Summary Judgment Order*].

[6] *Summary Judgment Order*, 2018 WL 1932742, at *5-7.

[7] *Peterson v. City of Fort Worth*, 588 F.3d 838, 844 (5th Cir. 2009).

[8] *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009).

[9] *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

[10] *Cass v. City of Abilene*, 814 F.3d 721, 733 (5th Cir. 2016) (quoting *Kovacic v. Villarreal*, 628 F.3d 209, 214 (5th Cir. 2010)).

No. 18-40736

have the burden of showing that Campbell violated Robles's clearly established rights.[11]   Defining the law "at a 'high level of generality'" will not suffice.[12] Rather, the Robles bear the burden of showing specific law on point.[13]

## A

Robles claims that Campbell violated his Fourth Amendment rights by using excessive force when he arrested him on December 31, 2013. "[T]o succeed on an excessive force claim, the plaintiff bears the burden of showing: (1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable."[14]   The test for Fourth Amendment reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[15]

Campbell argues that his use of force was objectively reasonable under the *Graham* factors, and even if it was not, he did not violate any clearly established law. We need not decide whether Robles has established a Fourth Amendment violation. We will assume, *arguendo*, that he has and turn to whether the cases he cited clearly establish such a violation.

Robles first cites *Bush v. Strain*, arguing that *any* use of force was unreasonable because he did not attempt to resist or flee. The *Bush* decision is not on point. In *Bush*, the officers "forcefully slammed Bush's face into a

---

[11] *See id.*

[12] *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (quoting *Cass*, 814 F.3d at 732-33).

[13] *See id.* (citing *Cass*, 814 F.3d at 732-33).

[14] *Cass*, 814 F.3d at 731 (quoting *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)).

[15] *Graham v. Connor*, 490 U.S. 386, 396 (1989).

No. 18-40736

vehicle when Bush was handcuffed and subdued" causing injuries to her face, teeth and jaw.[16]  Bush admitted that she resisted the arrest at first, but the court emphasized that she was not resisting when the force was used.[17]  Here, Robles was not subdued when Campbell took him to the ground.  Campbell had commanded Robles to turn around six times.  Instead of complying, Robles took a step toward Campbell and told him to "stop hollering."  Accordingly, the determinative fact in *Bush*—that she was already subdued—is absent here. Our decision in *Bush* does not establish that Robles was entitled to be free from any force.

Robles also relies on *Trammell v. Fruge*.  In *Trammell*, police responded to a call about a potentially intoxicated motorcyclist on the side of the road.[18] After a brief conversation, the officer asked Trammell, the motorcyclist, to walk towards him.[19]  Trammell declined.[20]  The officer told Trammell to place his hands behind his back, and Trammell again refused to comply.[21]  The officer then grabbed Trammell's right arm to arrest him.[22]  Trammell pulled back and told the officer it hurt and not to grab him there.[23]  At that point, two other officers became involved.[24]  Between the three officers, they executed a knee strike on Trammell's thigh, put him in a headlock, and pulled him to the ground.[25]

The court determined that fact issues precluded summary judgment on Trammell's excessive force claim.  First, the court looked at the crime at issue—

---

[16] *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008).

[17] *Id.* at 496, 502.

[18] *Trammell v. Fruge*, 868 F.3d 332, 336 (5th Cir. 2017).

[19] *Id.* at 337.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

public intoxication—and determined that it was "a minor offense militating against the use of force."[26]  Second, the court found a fact issue as to whether Trammell posed an immediate threat to the officers or others.[27]  Third, the court determined that Trammell was not attempting to flee and that there was a factual dispute as to whether he was actively resisting arrest.[28]  The court stated at one point that if "conduct amounts to mere 'passive resistance,' use of force is not justified."[29]  The court held that even if Trammell's decision to pull his arm away from the officers amounted to "some degree of resistance that would justify an officer's use of force," the officers' actions were not reasonable because only three seconds elapsed between the officer's initial request and the takedown.[30]  According to the court, a jury could find that more negotiation should have been used.[31]

The instant case is readily distinguishable.  The alleged crime at issue—assaulting LaRue by attempting to throw her over a second-floor balcony—is far more severe than public intoxication.  Robles also posed more of a threat to Campbell than Trammell.  The video indicates that Campbell thought Robles had a pocket knife in his hand.  Robles denied Campbell's allegation stating that he had the keys to his truck.  Even if Robles only had keys in his hand as he claimed, a reasonable officer could have construed keys as a weapon, especially when dealing with a person accused of violent behavior.  The video does not indicate that Robles ever physically resisted arrest.  However, he ignored six commands to turn around.  From the time of the first request to Campbell's first contact with Robles, approximately ten seconds elapsed, over

---

[26] *Id.* at 340 (citing *Reyes v. Bridgwater*, 362 F. App'x 403, 407 n. 5 (5th Cir. 2010)).
[27] *Id.*
[28] *Id.* at 341.
[29] *Id.* (citing *Hanks v. Rogers*, 855 F.3d 738, 746 (5th Cir. 2017)).
[30] *Id.* at 342.
[31] *Id.*

three times that in *Trammell*. Finally, the force used on Robles was much less extreme than the force the officers used on Trammell. Campbell did not execute any blows to Robles. He put one of Robles's arms behind Robles's back, pressed him against a fence, and then brought him to the ground where he put Robles in handcuffs.

Robles argues that because he only passively resisted, any force was unjustified under *Trammell*. The statement in *Trammell* that force is not justified when an individual only passively resists is best read in the context of the third *Graham* factor. The third *Graham* factor does not weigh in favor of the use of force when an individual is not actively resisting. This is supported by *Trammell*'s earlier statement that officers can consider a suspect's noncompliance with instructions in determining whether to use force.[32] The officer must also consider "the relationship between the need and the amount of force used."[33] Thus, *Trammell* does not establish that when mere passive resistance is at issue, officers are precluded from using any force, but instead that the amount of reasonable force varies. Campbell used a limited amount of force in taking Robles down.

Robles next cites *Deville v. Marcantel*, a case in which a suspect refused to exit her vehicle at a minor traffic stop. Two officers allegedly then broke her window open with a heavy flashlight, opened the door, pulled her out of the car, and threw her against her vehicle, resulting in a blow to her abdominal area that later caused her to fall to the ground in pain.[34] The *Deville* decision involved a minor traffic offense and a much greater degree of force.[35] Accordingly, *Deville* is not applicable.

---

[32] *Trammell*, 868 F.3d at 341 (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)).

[33] *Id.* (quoting *Deville*, 567 F.3d at 167).

[34] *Deville*, 567 F.3d at 162.

[35] *Id.* at 169.

Finally, Robles cites *Hanks v. Rogers*. An officer pulled Hanks over for driving twenty miles per hour below the speed limit.[36] The officer made Hanks get out of his car.[37] Hanks faced away from the officer with his empty hands on the trunk of his car, on the back of his head, and then behind his back.[38] The officer instructed Hanks to kneel, and Hanks turned his head to ask if he was under arrest.[39] The officer repeated his command twice.[40] Hanks "made a small lateral step with his left foot" while maintaining his hands behind his back.[41] In response, the officer "administered a blow to Hanks's upper back or neck" causing him to fall onto the trunk of his car.[42] The officer then took Hanks to the ground.[43] The court considered the *Graham* factors and determined that the incident involved a minor traffic violation, with no immediate threat, and no active resistance or attempt to flee.[44] For the same reasons that the instant case is distinguishable from *Trammell*, it is also distinguishable from *Hanks*. Moreover, *Hanks* determined that the officer violated clearly established law, stating, "Where, as here, an individual stopped for a minor traffic offense offers, at most, passive resistance and presents no threat or flight risk, abrupt application of physical force rather than continued verbal negotiating (which may include threats of force) is clearly unreasonable and excessive."[45] If for no other reason, *Hanks* does not clearly establish a violation here because the underlying crime was not a minor traffic offense but an act of violence.

---

[36] *Hanks v. Rogers*, 853 F.3d 738, 741 (5th Cir. 2017).
[37] *Id.* at 742.
[38] *Id.* at 746.
[39] *Id.* at 742.
[40] *Id.*
[41] *Id.*
[42] *Id.* at 743.
[43] *Id.*
[44] *Id.* at 745-46.
[45] *Id.* at 748.

No. 18-40736

In short, we decline to opine on whether Campbell's actions amount to a constitutional violation. Robles failed to meet his burden to show that such a violation was clearly established, particularly when dealing with an underlying violent crime. Accordingly, Campbell is entitled to qualified immunity.[46]

## B

The Robles claim that Campbell retaliated against them for exercising their First Amendment rights by (1) threatening to arrest them if they called the police again and (2) actually arresting Robles on December 31. The district court determined that the Robles did not present sufficient evidence that the threat chilled their speech, and that Campbell was entitled to qualified immunity.[47] The district court also held that the arrest was constitutionally permissible because Campbell had probable cause to arrest Robles.[48] We agree that the Robles' claims fail.

To establish a First Amendment retaliation claim, the Robles must show that "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct."[49] The Robles have not met their burden of showing that Campbell's December 25 threat violated clearly established law.

---

[46] *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)) (allowing courts to decide which prong of the qualified immunity analysis to consider first).

[47] *Summary Judgment Order*, 2018 WL 1932742, at *6.

[48] *Id.* at *7.

[49] *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

11

No. 18-40736

The Robles rely on *World Wide Street Preachers Fellowship v. Town of Columbia* to show that Campbell violated clearly established law. In that case, we considered whether the government's direct limitation on speech violated the First Amendment.[50] The opinion in *World Wide Street Preachers* involved public protest on the shoulder of a roadway in Columbia, Louisiana.[51] Police arrested one of the protesters and threatened to arrest the rest if they did not leave immediately.[52] The protesters claimed that the city had limited their ability to protest in violation of the First Amendment.[53] The district granted the city's motion for summary judgment,[54] and we reversed because fact questions remained regarding whether the prohibition was content-based or content-neutral.[55] That inquiry would determine the level of scrutiny and, in turn, whether the police violated the protesters' First Amendment rights.[56]

Despite the Robles' contentions, *World Wide Street Preachers* does not clearly establish that Campbell violated their First Amendment rights. First, *World Wide Street Preachers* was not a retaliation case, so a different standard applied.[57] Second, in *World Wide Street Preachers*, we did not hold that the police action violated the First Amendment. We recognized that a threat of

---

[50] *See World Wide Street Preachers Fellowship v. Town of Columbia*, 245 F. App'x 336, 342 (5th Cir. 2007).

[51] *Id.* at 340.

[52] *Id.*

[53] *Id.* at 340-41.

[54] *Id.* at 342.

[55] *Id.* at 345.

[56] *Id.* at 344-45.

[57] *Compare id.* at 343-45 (explaining that in a direct limitation on speech case, either strict or intermediate scrutiny will apply depending on the nature of the restricted speech), *with Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (Plaintiffs alleging First Amendment retaliation must show "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct.").

12

sanctions could violate the First Amendment but held that a fact issue precluded summary judgment on the issue.[58]

Moreover, the cases are factually distinct. The Robles cite *World Wide Street Preachers* because it also involved the threat of arrest by a police officer. Despite that single factual similarity, the cases are otherwise factually distinct and *World Wide Street Preachers* cannot demonstrate clearly established law. First, the context of the threat was decidedly different. In *World Wide Street Preachers*, the threat was made against active protestors,[59] whereas the threat against Robles was in the context of a police visit after multiple 911 calls in the course of ten days (one of which was based on mere suspicion). Second, the amount of deterrence caused by the threat cannot be compared. In *World Wide Street Preachers*, one protestor had already been arrested, and the threat that other protestors would be arrested was imminent.[60] That is particularly true given that officers were present to make immediate arrests.[61] Such a threat likely created a high level of deterrence and had an immediate chilling effect. In this case, Campbell made a threat of future arrest, which in context, likely did very little to deter Robles's speech. Unlike *World Wide Street Preachers*, the Robles did not see others being arrested and had much less reason to believe Campbell would follow through on his threat. Even if *World Wide Street Preachers* held that the police conduct violated the protesters' First Amendment rights, it would not clearly establish that Campbell violated the Robles' rights. Accordingly, Campbell is entitled to qualified immunity.

Robles's claim for the alleged retaliatory arrest also fails. "[E]ven where a citizen believes that he has been subject[ed] to a retaliatory detention or

---

[58] *World Wide Street Preachers*, 245 F. App'x at 348-49.
[59] *Id.* at 340.
[60] *See id.*
[61] *See id.*

13

arrest, if there was reasonable suspicion or probable cause for an officer to seize the citizen, 'the objectives of law enforcement take primacy over the citizen's right to avoid retaliation.'"[62]  In other words, Campbell is entitled to qualified immunity "unless there was no actual probable cause for the arrest and [he was] objectively unreasonable in believing there was probable cause for the arrest."[63]  "Probable cause 'means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"[64]  Robles argues that Campbell did not have probable cause to arrest him because Campbell and LaRue were allegedly conspiring with each other.  Even if that allegation was supported by the evidence, which it is not, "subjective intent, motive, or even outright animus are irrelevant in a determination of qualified immunity based on arguable probable cause."[65]  Indeed, probable cause is an objective inquiry based on the facts known to the officer at the time of the arrest.[66]

Judging the undisputed facts objectively, Campbell had probable cause to arrest Robles.  Based on the 911 call relayed to Campbell, Robles attempted to push LaRue over a second-story railing.  Then, when Campbell arrived at the residence, he found a broken flower pot beneath a second-story railing, supporting LaRue's version of the facts.  LaRue was in tears and told Campbell that Robles tried to throw her off the second floor.  Those facts, combined with the already hostile relationship between Robles and LaRue, are sufficient to establish probable cause that Robles assaulted or attempted to assault

---

[62] *Allen v. Cisneros*, 815 F.3d 239, 244-45 (5th Cir. 2016) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 261-62 (5th Cir. 2002)).

[63] *Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017).

[64] *Id.* (quoting *Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013)).

[65] *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000).

[66] *Freeman v. Gore*, 483 F.3d 404, 414 (5th Cir. 2007).

No. 18-40736

LaRue.[67]  Moreover, even if the evidence supported the conspiracy allegation made by Robles, Robles offers no evidence that, on this particular occasion, Campbell knew the accusations made by LaRue were false.  Robles asks us to make an inference in his favor, but he produces no evidence to support such an inference.  Because the alleged retaliatory arrest was based on probable cause, Campbell is entitled to qualified immunity on the claim.

## III

The Robles challenge the district court's 12(b)(6) dismissal of their claims for (1) false arrest against Deputy Campbell; (2) a Fourteenth Amendment violation against Deputy Ciarletta; and (3) *Monell* liability against Aransas County.  We review a district court's grant of a motion to dismiss de novo, applying the same standard on review as that applied by the district court.[68]  In order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[69]  A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level."[70]  Although we are bound to accept plaintiff's factual allegations as true, "we do not credit conclusory allegations or allegations that merely restate the legal elements of a claim."[71]  A plaintiff is not entitled to relief when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."[72]

---

[67] *See* TEX. PENAL CODE. ANN. § 22.01(a) (West 2019) (A person commits an offense of assault if he (1) "intentionally, knowingly, or recklessly causes bodily injury to another"; (2) "intentionally or knowingly threatens another with imminent bodily injury"; or (3) "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.")

[68] *See Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

[69] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[70] *Id.* at 555.

[71] *Chhim v. Univ. of Tex.*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[72] *Iqbal*, 556 U.S. at 679.

No. 18-40736

As a preliminary matter, the Robles argue that the district court should not have considered Campbell's body camera video or Ciarletta's police report when ruling on the motion to dismiss.  At the 12(b)(6) stage, the court accepts all facts pleaded in the complaint as true.[73]  However, the court may review documents attached to the motion to dismiss if "the complaint refers to the documents and they are central to the claim."[74]  The Robles' complaint referred to both the video and Ciarletta's report.  Further, both pieces of evidence are central to Robles's claims.  Robles's Fourteenth Amendment claim is based entirely on Ciarletta's report.  Similarly, Robles relies on the video from Campbell's camera as evidence that Campbell lacked probable cause to arrest him.  Accordingly, the district court properly considered the evidence.

### A

Robles first challenges the district court's dismissal of his false arrest claim.  To state a false arrest claim, Robles must allege facts that show Campbell lacked probable cause.[75]  As explained above, the video shows that (1) LaRue was crying when Campbell entered the house; (2) there was a broken flower pot beneath the balcony from which LaRue claimed Robles tried to throw her; and (3) the dispatcher and LaRue told Campbell that Robles allegedly tried to throw LaRue off the second floor.  Even at the 12(b)(6) stage, the Robles' allegations and the properly considered evidence support the district court's probable cause finding.

### B

Robles next argues that he stated a Fourteenth Amendment claim against Ciarletta for filing a false police report.  We have said that individuals

---

[73] *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) (citing *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).

[74] *Id.* (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

[75] *Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017).

have "a due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against [them]."[76]  Robles's conclusory allegation that Ciarletta generated a false report is undermined by the report itself.  Ciarletta did not claim to have any knowledge of the incident.  Instead, he documented what witnesses told him when he arrived.  On appeal, Robles does not argue that Ciarletta's report indicates the fabrication of facts.  Robles argues that the court should have based its ruling on his conclusory allegation and should not have considered the report.  As explained above, the district court was entitled to rely on the report.  Accordingly, Robles offers no basis to justify reversing the district court's dismissal of his claim.

## C

In their amended complaint, the Robles' alleged that Aransas County was subject to *Monell* liability because the county has a custom, policy, practice, and procedure of:

(1) detaining/arresting people without reasonable suspicion or probable cause;

(2) using excessive force;

(3) allowing police officers to make false statements to justify improper arrests and uses of force;

(4) failing to discipline or train officers;

(5) hiring unqualified deputies;

(6) turning a blind eye to unconstitutional conduct;

(7) not having proper policies in place to prevent constitutional violations; and

(8) using excessive force and wrongfully arresting citizens who use their free speech rights.

---

[76] *Cole v. Carson*, 802 F.3d 752, 771 (5th Cir. 2015), *vacated sub nom. Hunter v. Cole*, 137 S. Ct. 497 (2016) (mem.), *reinstated in relevant part, Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019), *petition for cert. filed*, 2019 WL 6817403 (U.S. Dec. 9, 2019) (No. 19-753).

No. 18-40736

The Robles also alleged that Aransas County ratified the actions taken by Campbell.

"To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of the constitutional right."[77]  Official policies usually exist as written statements, ordinances, or regulations.[78]  However, a policy may also arise in the form of a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy."[79]  To survive a motion to dismiss on an unconstitutional custom or practice claim, plaintiffs must point to factual allegations sufficient to allow a reasonable inference that there was a pattern of misconduct involving similar acts.[80]  A pattern requires "sufficiently numerous prior incidents as opposed to isolated instances."[81]

Turning to the Robles' allegations, we find no constitutional violation for false arrest or filing a false report.  Accordingly, *Monell* liability cannot attach to those claims.[82]  Regarding the claims for using excessive force (the second and eighth *Monell* claims), the Robles allege two other incidents of excessive force.  Only one of those incidents occurred prior to Robles' arrest.  We agree with the district court that those allegations are insufficient to allow a reasonable inference that there was a pattern of misconduct by Aransas County, particularly without any allegations concerning the size of the

---

[77] *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

[78] *Id.*

[79] *Id.* (quoting *Piotrowski*, 237 F.3d at 579).

[80] *See Culbertson v. Lykos*, 790 F.3d 608, 616, 628 (5th Cir. 2015).

[81] *Id.* at 628 (quoting *Peterson*, 588 F.3d at 851).

[82] *See Peterson*, 588 F.3d at 847.

18

department.[83]　Likewise, the Robles describe two instances when Aransas County allegedly turned a blind eye to unconstitutional conduct. Those instances took place over the course of approximately a year and a half. Those facts are also insufficient to show a pattern of misconduct.[84]

To show a failure to train employees, plaintiffs must show, among other things, a deliberate indifference to train on the part of the government.[85] A plaintiff may show deliberate indifference in one of two ways. First and most often, deliberate indifference generally requires notice of a pattern of similar violations at the time the plaintiff's own rights were violated.[86] The Robles only allege one instance of *any* misconduct prior to the events giving rise this suit. That is insufficient to establish notice of a pattern of misconduct generally, let alone a pattern of similar violations. Second, we have noted that in narrow circumstances, when a constitutional violation results as the highly predictable consequence of a failure to train, the failure to train can amount to deliberate indifference.[87] The Robles do not argue that the alleged failure to train falls within this narrow rule.[88] Nor did they allege any facts to support that such a narrow rule should be applied here.

To state a claim for hiring unqualified employees, a county's hiring practice must amount to deliberate indifference to the risk that a constitutional violation will result.[89] To make this showing, an adequate scrutiny of an

---

[83] *See id.* at 851-52 (holding that twenty-seven previous incidents did not establish an official policy).

[84] *See id.*

[85] *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998)).

[86] *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (citation omitted); *see also Kitchen v. Dallas County*, 759 F.3d 468, 484 (5th Cir. 2014) (citation omitted), *abrogated on other grounds by Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

[87] *Kitchen*, 759 F.3d at 484.

[88] *See United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) ("It has long been the rule in this circuit that any issues not briefed on appeal are waived.").

[89] *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410-11 (1997).

applicant's background must lead a reasonable policymaker to conclude that the "plainly obvious consequence of [hiring] the applicant would be the deprivation of a third party's federally protected right."[90]  The Robles allege no facts supporting such a showing.

The Robles' claim that Aransas County has a custom or practice of "not having the proper policies in place to prevent the Constitutional violations suffered by plaintiffs."  The Robles offer no basis for that claim other than the conclusory allegation itself.  Moreover, the claim seems materially indistinguishable from the Robles' other claims, which were all properly dismissed.  Accordingly, this claim was properly dismissed as well.

Finally, the Robles' ratification claim fails.  According to the Robles, Aransas County and its officials ratified Campbell's actions by failing to investigate Campbell's behavior.  If an authorized policymaker approves a subordinate's decision and the basis for it, their ratification is chargeable to the municipality because their decision is final.[91]  However, ratification is limited to "extreme factual situations."[92]  For example, in *Peterson v. City of Fort Worth*, Mr. Peterson and his wife decided to sleep in their truck after becoming intoxicated one evening.[93]  The parking lot security guard called the police.[94]  Ultimately, the police officers dragged Peterson out of his truck, slid him across the ground when he fell out, handcuffed him, pulled him up from the ground by his handcuffs, slammed him against his truck, and executed a knee strike to his thigh which resulted in two surgeries and a two-week

---

[90] *Id.* at 411.

[91] *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

[92] *Id.* (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)).

[93] *Id.* at 843.

[94] *Id.*

hospital stay.[95]  We held that *Peterson* was not an extreme factual situation.[96]
If *Peterson* did not involve sufficiently extreme facts to justify a ratification
theory, neither does the instant case.  Accordingly, the Robles' claim was
properly dismissed.

*    *    *

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[95] *Id.* at 843-44.
[96] *Id.* at 848.