# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 24, 2024

Lyle W. Cayce
Clerk

————————

No. 24-40034

————————

Marc Degenhardt; Augustus Degenhardt,

*Plaintiffs—Appellants*,

*versus*

Phillip Bintliff; Armando Cisneros,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:23-CV-239

———————————————————————

Before Clement, Graves, and Ramirez, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:

Marc and Augustus Degenhardt allege that Corpus Christi Police Lieutenant Phillip Bintliff unlawfully initiated a traffic stop and that Bintliff and Officer Armando Cisneros unlawfully searched and towed their vehicle and retaliated against them for engaging in protected speech. The district court dismissed the suit. The facts alleged in the complaint indicate that the Degenhardts have stated a claim for Bintliff's violation of their Fourth Amendment rights by initiating the traffic stop without reasonable suspicion. But the facts suggest that the officers had probable cause to search the vehicle. With respect to the Degenhardts' remaining claims, Bintliff and

No. 24-40034

Cisneros asserted a valid qualified-immunity defense. Thus, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

## I.

We begin with the allegations of the operative complaint,[1] which at the dismissal stage we accept as true and construe in the light most favorable to the plaintiffs. *Crane v. City of Arlington*, 50 F.4th 453, 461 (5th Cir. 2022).

On March 20, 2022, Marc Degenhardt, age 18, was driving his parents' black Dodge Challenger. His brother Augustus, age 20, rode as a passenger. The Challenger was stopped at a traffic light waiting to turn left onto a highway; a blue Dodge Charger was also waiting to turn left in the next lane. The Degenhardts allege that when the light turned green, both vehicles turned left and merged into a single lane.

Bintliff observed the cars and pulled the Challenger over. Although the Degenhardts protested that they did nothing wrong, Bintliff, incensed, allegedly accused Marc of "burn[ing] out" at the intersection and "peeling out from the intersection to race the other vehicle that was stopped at the light" right in front of Bintliff's patrol car. Bintliff explained that he had heard engine revving sounds and that he had seen the Challenger spin its tires. Cisneros arrived at the scene shortly thereafter to assist.

The Degenhardts allege that during the stop, Bintliff shined a flashlight into the vehicle and observed an opened cardboard box containing White Claw Hard Seltzers. After learning that the brothers were under 21, the officers ordered the Degenhardts out of the car. Cisneros then conducted

---

[1] The Degenhardts amended their complaint after Bintliff and Cisneros raised a qualified-immunity defense. For ease of reference, we refer to the operative complaint as the "complaint."

a *Terry* frisk of Marc, discovering a vape pen.[2] Throughout the stop, Bintliff and Cisneros repeatedly expressed frustration with what they perceived as the brothers' defiant attitudes, noting that the Degenhardts were smirking and laughing throughout the encounter. The complaint alleges that the officers repeatedly threatened to arrest the Degenhardts if they failed to cooperate.

Next, the Degenhardts allege that Cisneros shouted at Bintliff that the officers should "take" the car in retaliation for the perceived disrespect of the officers. According to the complaint, Cisneros told Bintliff that they should "impound [the vehicle] because [the Degenhardts] were laughing" and "smirking" throughout the encounter. The officers then impounded the vehicle, charged both Marc and Augustus with possessing alcohol as minors, and issued Marc a warning for reckless driving. The officers did not arrest the Degenhardts; rather, they dropped them off at a nearby convenience store. The charges were later dropped.[3]

The Degenhardts sued under 42 U.S.C. § 1983, asserting four claims. The Degenhardts allege that (1) Bintliff unlawfully initiated the traffic stop and that both officers (2) unlawfully searched the car, (3) unlawfully seized the car, and (4) retaliated against the brothers for engaging in protected free speech. Bintliff and Cisneros moved to dismiss, arguing that the Degenhardts had not stated actionable claims and could not overcome qualified immunity. The district court granted the motion. The Degenhardts timely appealed.

─────────────────────

[2] At the time of the stop, Texas law made it illegal for an individual under the age of 21 to possess an e-cigarette. See Tex. Health & Safety Code § 161.252(a).

[3] The Degenhardts allege that the charges were dropped because the prosecutor determined that the officers lacked probable cause. The complaint provides no additional detail.

## II.

We review dismissals under Rule 12(b)(6) de novo. *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023). To survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While we accept all well-pleaded facts as true, we do not accept as true "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions." *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quotation marks and citation omitted).

To state a claim under 42 U.S.C. § 1983, plaintiffs must allege that a defendant deprived them of a federal right and that the defendant acted under color of state or territorial law. *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020). Qualified immunity, however, "adds a wrinkle." *Id.* "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011).

After an officer pleads qualified immunity, a plaintiff "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Arnold*, 979 F.3d at 267. "The crucial question is whether the complaint pleads facts that, if true, would permit the inference that Defendants are liable under § 1983 and would overcome their qualified immunity defense." *Terwilliger v. Reyna*, 4 F.4th 270, 280 (5th Cir. 2021) (cleaned up).

There is a two-part test to overcoming qualified immunity. "First, we ask whether the facts, 'taken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a federal right.'" *Argueta*

*v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023) (quoting *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014)). "[S]econd, we ask whether the right in question was 'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Id.* (internal quotation marks omitted).

"[A] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Melton v. Phillips*, 875 F.3d 256, 265 (5th Cir. 2017) (en banc) (internal quotation marks omitted). This is a "demanding standard." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

> The Supreme Court has repeatedly told courts . . . not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.

*Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12, (2015) (internal quotation marks omitted)).

## III.

The Degenhardts pleaded facts sufficient to state a Fourth Amendment claim that Bintliff lacked a reasonable suspicion to initiate the traffic stop. However, the Degenhardts failed to allege facts showing that Bintliff and Cisneros lacked probable cause to search the car. Accordingly, the Degenhardts have adequately alleged that Bintliff deprived them of their Fourth Amendment rights with respect to the initial traffic stop but not as to the search of their car.

**A.**

First, the traffic stop. The Degenhardts allege that Bintliff initiated the traffic stop without a reasonable suspicion that a crime had occurred. "Under *Terry* [*v. Ohio*, 392 U.S. 1 (1968),] if a law enforcement officer can point to specific and articulable facts that lead him to reasonably suspect that a particular person is committing, or is about to commit, a crime, the officer may briefly detain—that is, 'seize'—the person to investigate." *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014). "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Kansas v. Glover*, 589 U.S. 376, 380 (2020) (internal quotation marks omitted).

A reasonable suspicion exists where an officer can "point to specific and articulable facts [that], taken together with rational inferences from those facts, reasonably warrant [the seizure]." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). Officers are permitted to make "commonsense judgments and inferences about human behavior." *Glover*, 589 U.S. at 380–81 (internal quotation marks omitted).

The facts alleged in the Degenhardts' complaint contradict Bintliff's basis for initiating the traffic stop, namely, his suspicion that the driver of the Challenger (Marc Degenhardt) was unlawfully racing the driver of the Charger and driving recklessly.[4] While Bintliff apparently observed the

---

[4] Texas law outlaws "drag rac[ing]," or operating "two or more vehicles from a point side by side at accelerating speeds in a competitive attempt to outdistance each other." TEX. TRANSP. CODE § 545.420(b)(1). It also outlaws "rac[ing]": "the use of one or more vehicles in attempt to . . . outgain or outdistance another vehicle or prevent another vehicle from passing" or "arrive at a given destination ahead of another vehicle."

Challenger "peeling out from the intersection to race the other vehicle," the Degenhardts allege that

> [w]hen the light turned green, both vehicles turned left and proceeded to travel down TX-361, before smoothly merging into one lane. Neither vehicle drove erratically, impeded other traffic, or otherwise offered a threat to anyone or anything in their surroundings. Neither vehicle moved to outpace the other, maintaining the same steady pace. Two cars smoothly shared the road.

At the motion-to-dismiss stage, we are required to "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiffs." *Anderson v. Valdez*, 845 F.3d 580, 589 (5th Cir. 2016) (internal quotation marks omitted).[5] Doing so requires us to credit the Degenhardts' account of the cars' smooth departure from the traffic light over Bintliff's contention that the Challenger peeled out ahead of the Charger.

The district court failed to follow this principle of accepting all well-pleaded facts as true and viewing them in the plaintiff's favor. Instead, the district court "indulge[d] all reasonable inferences in favor of Lt. Bintliff's reasoning." The district court noted that "[r]easonable suspicion is

─────────────────────

*Id.* § 545.420(b)(2). Texas law further prohibits reckless driving, *i.e.*, "driv[ing] a vehicle in willful or wanton disregard for the safety of persons or property." *Id.* § 545.401.

[5] One relevant exception to this default rule of assuming the truth of the plaintiff's allegations in the face of a motion to dismiss is "[i]f an allegation is qualified by the contents of an exhibit attached to the pleadings, but the exhibit instead contradicts the allegation, 'the exhibit and not the allegation controls.'" *Sligh v. City of Conroe*, 87 F.4th 290, 298 (5th Cir. 2023) (quoting *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004)). This exception is relevant to this case because the complaint includes stills from what appears to be dashcam footage from Bintliff's perspective. The stills alone, however, are insufficient to shed meaningful light on the factual allegations described in this section (III.A.), and, oddly enough, the actual footage is nowhere to be found in the record. So the exhibit-exception to the default rule of crediting a well-pleaded complaint does not apply here.

evaluated from the point of view of the law enforcement officer, considering his experience, the totality of the circumstances, and all reasonable inferences." But the cases that the district court cited for this proposition do not arise in the context of a motion to dismiss. *See Alabama v. White*, 496 U.S. 325 (1990); *United States v. Rodriguez*, 835 F.2d 1090, 1092 (5th Cir. 1988). This court has explained that the facts forming the basis for reasonable suspicion "must be viewed in their totality as seen and interpreted by the officer or agent's experience." *Rodriguez*, 835 F.2d at 1092. That principle does nothing to change the fact that, in the context of a motion to dismiss, the court must credit all well-pleaded factual allegations, absent some exception to that rule.

Looking at the facts as the Degenhardts present them, and drawing reasonable inferences in *their* favor rather than Bintliff's, the only possible basis for reasonable suspicion sufficient to justify the traffic stop was the loudness of the Challenger. As the complaint reflects, Marc admitted that the Challenger "is very loud; he does not know why, but even the dealership agreed it is unusually loud." Reasonable suspicion of any traffic violation justifies a traffic stop, *Lopez-Moreno*, 420 F.3d at 430, and Texas law requires "a muffler in good working condition that continually operates to prevent excessive or unusual noise," TEX. TRANSP. CODE § 547.604(a). But it is not clear from the allegations whether the noise level of the Challenger was related to the muffler or some other cause.[6] Taking the allegations of the complaint as true, there is no clear and articulable fact indicating that the Degenhardts committed a traffic violation. Thus, assuming the truth of the

---

[6] Given the conflicting accounts of the source of the Challenger's loud noise (revving the engine versus otherwise), the takeoff from the traffic light (Marc peeling out versus maintaining a steady speed), and other fact issues, the dashcam footage might clarify the existing fact disputes on remand.

complaint's allegations, Bintliff lacked reasonable suspicion, and the Degenhardts have stated a claim for a violation of their Fourth Amendment rights as a result of the traffic stop. We therefore reverse the district court's grant of the officers' motion to dismiss on this point and remand for further proceedings.

## B.

On appeal, Bintliff failed to argue that he is entitled to qualified immunity as to the traffic-stop claim. Accordingly, Bintliff has forfeited this argument on appeal. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal—or by failing to adequately brief the argument on appeal."). We therefore leave the question of whether Bintliff is entitled to qualified immunity on this point to the district court on remand.

## C.

Next, the Degenhardts argue that the officers unlawfully searched their car. They contend that "Bintliff and Cisneros were without reasonable suspicion, probable cause, consent, warrant, or lawful basis to search their vehicle by opening the door to [peer] inside." According to the Degenhardts, Bintliff and Cisneros lacked a reasonable suspicion that a crime occurred until *after* they began searching the car.

"It is well settled that warrantless searches of automobiles are permitted by the Fourth Amendment if the officers have probable cause to believe that the vehicle contains contraband or other evidence of a crime." *United States v. McSween*, 53 F.3d 684, 686 (5th Cir. 1995).

9

No. 24-40034

As the complaint itself explains, the alcoholic beverages were in plain view of the officers *before* they opened the door of the vehicle.[7] *See United States v. Phillips*, 261 F. App'x 740, 741 (per curiam) (5th Cir. 2008) (holding that marijuana lying in plain view on dashboard provided probable cause for warrantless search of vehicle). During the stop, Cisneros

> looked around at the visible areas of [the Degenhardts'] car from his position next to the door with his flashlight . . . . During his perusal, he noticed an opened cardboard box with cans in it, on the floorboard of the back seat behind Plaintiff Augustus's seat. The cans [were of] White Claw Hard Seltzer.

Thus, as the district court explained, this observation "provide[d] reasonable suspicion of a crime, given the apparent youth of [the Degenhardts]. Upon confirming their ages, Defendants had probable cause to conduct a search of the vehicle." *See* Tex. Alco. Bev. Code § 106.05 (criminalizing possession of alcohol by a minor). The district court properly dismissed the claim for an unreasonable search of the car.

## IV.

The Degenhardts further contend that the officers' decision to impound the Challenger amounted to a warrantless seizure. Although Bintliff and Cisneros failed to articulate a reason to impound the vehicle under the community caretaker exception, it was not clearly established that

---

[7] For avoidance of doubt, the fact that the Degenhardts have plausibly alleged an unlawful traffic stop does not affect our determination that there is no such plausible allegation with respect to the search of the car. As alleged, the officers did not search the vehicle until they had probable cause independent of the basis for the initial stop: they observed the cardboard box of White Claw Hard Seltzers in plain view in the backseat—an observation that does not implicate the Fourth Amendment because it does not constitute a search—and noted the apparent youth of the Degenhardts.

impounding a vehicle when an officer had probable cause to arrest the driver but nonetheless declined to do so amounted to an unconstitutional seizure.

Impounding a vehicle qualifies as a seizure subject to a Fourth Amendment analysis. *See United States v. McKinnon*, 681 F.3d 203, 207–08 (5th Cir. 2012). One exception to the Fourth Amendment's warrant requirement is the "community caretaking exception." *Id.* Under the community caretaking exception, police may impound vehicles in furtherance of "public safety" or "community caretaking functions" such as removing "disabled or damaged vehicles" and "automobiles [that] violate parking ordinances . . . jeopardiz[ing] both the public safety and the efficient movement of vehicular traffic." *South Dakota v. Opperman*, 428 U.S. 364, 368–69 (1976). "In considering whether this exception applies, our constitutional analysis hinges upon the reasonableness of the 'community caretaker' impound viewed in the context of the facts and circumstances encountered by the officer." *McKinnon*, 681 F.3d at 208; *see also Trent v. Wade*, 776 F.3d 368, 384 (5th Cir. 2015) ("[T]he touchstone of the Fourth Amendment is reasonableness.").

The parties disagree about whether the community caretaker exception applied here. According to Bintliff and Cisneros, because the community caretaker exception allows officers to impound vehicles "when the owner of the vehicle has been arrested while the vehicle is on the public streets," *Trent*, 766 F.3d at 387 n.13, they could impound the vehicle because the officers had probable cause to effectuate a full custodial arrest of the Degenhardts for being minors in possession of alcohol. The Degenhardts, in contrast, argue that because they were not actually arrested and posed no threat to public safety—pleading that they were properly licensed to drive, sufficiently insured, unimpaired, and the car was not inoperable or otherwise a danger to the public—Bintliff and Cisneros were unjustified in impounding the car.

We agree with the Degenhardts. The reason that officers can impound a vehicle under the community caretaker exception after the driver has been arrested is irrelevant to the reason for which the driver was arrested (*i.e.*, the probable cause). *See Opperman*, 428 U.S. at 369 n.5. When a driver is arrested, the police need to get the vehicle off the road so that it does not impede traffic or jeopardize public safety and to protect the vehicle itself. *Id.* at 368–69; *McKinnon*, 681 F.3d at 208–09 (holding community caretaking exception applied where vehicle could have become a nuisance, damaged, or stolen; the driver had no proof of insurance; and the vehicle's registration sticker was expired). Indeed, an officer's decision to impound a vehicle pursuant to the community caretaker exception must be "bas[ed] [on] something other than suspicion of evidence of criminal activity." *Colorado v. Bertine*, 479 U.S. 367, 376 (1987).

To be sure, if Bintliff and Cisneros reasonably believed that allowing the Degenhardts to remain on the road posed a threat to public safety, either because the officers reasonably believed that the brothers were intoxicated or were likely to continue driving recklessly, such rationale may have justified their decision to impound the vehicle under the community caretaker exception. But, according to the complaint, although Bintliff and Cisneros repeatedly asked the Degenhardts if they had been drinking, neither officer stated that they believed the brothers were intoxicated or that they impounded the Challenger because they believed the Degenhardts were impaired. And Bintliff and Cisneros do not assert that they impounded the vehicle because the Degenhardts were intoxicated; only that they had probable cause to arrest them for *possessing* alcohol. To the contrary, the complaint indicates that the officers pointed to the reckless driving warning as the basis for the impound at the time of the incident. But, again, that's not the argument Bintliff and Cisneros have advanced in court. At no point during these proceedings have the officers asserted that the reckless driving

warning warranted the impound, so any such argument is forfeited. *Rollins*, 8 F.4th at 397. We therefore decline to consider whether the reckless driving warning was a reasonable basis to impound the vehicle under the community caretaker exception.

Bintliff and Cisneros simply contend that because they had probable cause to arrest the Degenhardts for possessing alcohol underage, they were free to impound the vehicle without a warrant. But given that the officers did not actually arrest the Degenhardts, probable cause alone was not enough under the community caretaker exception. Because we conclude that Bintliff and Cisneros failed to articulate a lawful justification to seize the vehicle, the Degenhardts have at least stated a claim for a violation of their Fourth Amendment right on this point. The question, then, is whether such right is sufficiently established to defeat qualified immunity. *See Argueta*, 86 F.4th at 1088. We conclude that the answer is "no."

The Degenhardts fail to show that it is clearly established that impounding a vehicle when the available drivers were cited for a crime for which they could be arrested but were not amounted to an unconstitutional seizure. The Degenhardts cite only to caselaw standing for the proposition that an unreasonable seizure is generally unlawful. Such precedent is too general for purposes of qualified immunity. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 742 ("The general proposition . . . that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."). Bintliff and Cisneros are therefore entitled to qualified immunity with respect to this claim.

## V.

Lastly, we address the Degenhardts' First Amendment claim. The Degenhardts allege that Bintliff and Cisneros seized them and their vehicle

and initiated charges against them in retaliation for exercising their First Amendment rights, namely, smirking and laughing during the encounter. *See City of Houston v. Hill*, 482 U.S. 451, 461 (1987).

"[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U. S. 250, 256 (2006). To prevail on a First Amendment retaliation claim, a plaintiff must show that he was engaged in constitutionally protected activity, the officer's actions injured him, and "the officers' adverse actions were substantially motivated against Plaintiff's exercise of constitutionally protected conduct." *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017).[8]

"To ensure that officers may go about their work without undue apprehension of being sued, we generally review their conduct under objective standards of reasonableness." *Nieves v. Bartlett*, 587 U.S. 391, 403 (2019). A retaliation claim is only available "when non-retaliatory grounds are in fact insufficient to provoke the adverse consequences." *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (per curiam). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Nieves*, 587 U.S. at 398. It must be a "'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 399.

Thus, in the context of retaliatory arrest or prosecution, to prove causation, a plaintiff generally must show that the officers lacked probable cause to make the arrest. *Gonzalez v. Trevino*, 144 S. Ct. 1663, 1665 (2024)

---

[8] Bintliff and Cisneros do not contest that the Degenhardts have engaged in protected speech, *i.e.*, smirking and laughing, nor do they contest that the Degenhardts have suffered any injury. The only element in dispute is whether the officers' actions were motivated by the Degenhardts' exercise of constitutionally protected conduct.

(per curiam). We have likewise held that if an officer has a reasonable suspicion to initiate a seizure, "the objectives of law enforcement take primacy over the citizen's right to avoid retaliation." *Allen*, 815 F.3d at 245 (internal quotation marks omitted); *see also Nieves*, 587 U.S. at 398. A plaintiff may also prove causation if he or she can "produce[] objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Trevino*, 144 S. Ct. at 1666.

## A.

For the reasons set forth above, Bintliff and Cisneros established a lawful basis to search the car and to cite the Degenhardts for possessing alcohol as minors and driving recklessly. Additionally, the Degenhardts have not pleaded examples of similarly situated comparators who were treated differently. *See Nieves*, 587 U.S. at 407. Thus, the Degenhardts have failed to plead facts sufficient to show that the officers' actions were substantially motivated by the Degenhardts' expressions.

Bintliff and Cisneros had a lawful basis to search the Degenhardts' car. *See McSween*, 53 F.3d at 686; *Phillips*, 261 F. App'x at 741. The officers' discovery of the White Claws and vape pen—both of which were unlawful for the Degenhardts to possess—provided probable cause sufficient to extend the detention. *United States v. Andres*, 703 F.3d 828, 833 (5th Cir. 2013) ("If the officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain [the] occupants [of the vehicle] for a reasonable time while appropriately attempting to dispel this reasonable suspicion." (alteration in original)). The Degenhardts have likewise failed to plead comparator evidence. Accordingly, they have not pleaded sufficient facts to show that Bintliff's and Cisneros's non-retaliatory grounds for the seizures were insufficient to provoke their actions.

**B.**

That leaves the officers' decision to impound the car. On this point, the Degenhardts have failed to overcome the officers' qualified-immunity defense.

The Degenhardts contend that Bintliff and Cisneros had no non-retaliatory grounds sufficient to provoke their decision to impound the Challenger. *Nieves*, 587 U.S. at 398. The Degenhardts allege that Cisneros offered a retaliatory motive, telling Bintliff that they should impound the vehicle "because [the Degenhardts] were laughing" and "smirking," and shouted at Bintliff that they should "take" the car. Specifically, the complaint alleges that Cisneros told Bintliff: "I'll write up the reckless driving . . . and we'll impound [the vehicle] because they were laughing. As soon as you started walking away, they started laughing." After Bintliff allegedly asked if that were true, Cisneros replied, "Yeah. He was smirking the whole time you were talking to him." The Degenhardts assert that the officers' decision to impound the car was motivated by a desire to "t[each] [the Degenhardts] a lesson" for disrespecting police officers.

As discussed above, Bintliff and Cisneros have failed to articulate a lawful basis to seize the Challenger. The question, then, is whether the probable cause to arrest was nonetheless a non-retaliatory ground sufficient to provoke the officers' decision to impound the vehicle. It was not, but Bintliff and Cisneros are entitled to a qualified-immunity defense because existing precedent had not "placed the . . . constitutional question beyond debate." *Stanton v. Sims*, 571 U.S. 3, 6 (2013).

Most of the caselaw on retaliatory searches and seizures concerns arrests and prosecutions, not retaliatory seizures of property. Indeed, it was only recently that the Supreme Court clarified that "probable cause to make an arrest defeats a claim that the arrest was in retaliation for speech protected

by the First Amendment." *Nieves*, 587 U.S. at 397–98. Thus, it is not surprising that the Degenhardts only point to caselaw that generally stands for the proposition that an *arrest* unsupported by probable cause violates the First Amendment. *See Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017). Although our court has indicated that reasonable suspicion is generally also sufficient to defeat retaliatory seizure claims where only a reasonable suspicion is required to lawfully initiate a seizure, *Allen*, 815 F.3d at 245, we had not clearly addressed whether probable cause to initiate an *arrest* (*i.e.*, a seizure of a person) is a sufficient reason to seize property in that person's possession. For the reasons set forth in Section IV, *supra*, it is not. To defeat a retaliatory seizure claim, the officer must, at the very least, have had a lawful justification to seize the property. *See Nieves*, 587 U.S. at 407; *Allen*, 815 F.3d at 245. Nonetheless, Bintliff and Cisneros are entitled to qualified immunity. *See Reichle v. Howards,* 566 U.S. 658, 670 (2012) (granting qualified immunity when it was unclear whether probable cause supporting arrest was sufficient to defeat retaliatory arrest claim).

## VI.

Assuming the truth of the well-pleaded facts in the complaint, the Degenhardts have stated a claim for a violation of their Fourth Amendment rights based on Bintliff's decision to initiate the traffic stop. The district court improperly dismissed this claim. But the officers' decisions to search the Degenhardts' vehicle, write them up them for reckless driving, and charge them with possessing alcohol as minors were lawful and cannot support a § 1983 claim. And the Degenhardts' claims regarding the officers' decision to impound the car cannot overcome qualified immunity. We AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

24-40034

JAMES E. GRAVES, JR., *CIRCUIT JUDGE*, CONCURRING IN PART AND DISSENTING IN PART:

I agree with most of the majority's opinion. But I disagree that Bintliff and Cisneros are entitled to qualified immunity with respect to the First Amendment retaliation claim involving the impoundment of the Degenhardts' vehicle. Accordingly, I respectfully dissent from that portion of the opinion.

The Constitution prohibits "adverse government action against an individual because of her exercise of First Amendment freedoms." *Izen v. Catalina*, 398 F.3d 363, 367 (5th Cir. 2005) (quoting *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999)). Public servants are well apprised that they cannot "subject[] an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). These foundational principles have been consistently applied and reinforced in particularized policing contexts. For example, individuals may "use obscene or opprobrious language" toward law enforcement, *Lewis v. City of New Orleans*, 415 U.S. 130, 132 (1974), or "threat[en] to sue a police officer," *Turner v. Lieutenant Driver*, 848 F.3d 678, 690 (5th Cir. 2017), without fear of retaliation.

Here, the Degenhardts have alleged that Bintliff and Cisneros unlawfully impounded their vehicle in retaliation for "laughing," "smirking," and general "disrespect of the officers." *Ante* at 3. It is well established that the First Amendment protects a "significant amount of verbal criticism and challenge" toward officers. *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). It is also well established that law enforcement may not punish individuals solely for "words or conduct that offend." *Id.* at 465. And while *City of Houston* is set in the context of a retaliatory *arrest*, it follows *a fortiori* that annoying conduct or offensive words trigger similar protections in the context of a retaliatory *seizure*. This is a clear circumstance where "a

general constitutional rule already identified in the decisional law [applies] with obvious clarity to the specific conduct in question." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (citation omitted); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (requiring only that "[t]he contours of the right [] be sufficiently clear," not that "the very action in question have previously been held unlawful").

The majority recognizes that the Degenhardts have adequately alleged a First Amendment retaliation claim, and correctly concludes that Bintliff and Cisneros "failed to articulate a lawful basis to seize" the brothers' vehicle and lacked a "non-retaliatory ground sufficient" to justify its impoundment. *Ante* at 16. But it then charts a different course, concluding that recent caselaw—specifically, *Allen v. Cisneros*, 815 F.3d 239 (5th Cir. 2016) and *Nieves v. Bartlett*, 587 U.S. 391 (2019)—cast sufficient uncertainty over whether the seizure of personal property is permissible when probable cause to arrest an individual is present.

To be sure, uncertainty in the state of the law can affect the qualified immunity analysis. *Reichle v. Howards*, 566 U.S. 658, 670 (2012). But neither *Nieves* nor *Allen* has any bearing on the unconstitutional nature of Bintliff and Cisneros's alleged retaliation. Tellingly, neither case offers any insight toward the general context we are confronted with: the seizure of *personal property* when probable cause is present. *Nieves* provides that probable cause for an arrest defeats a claim that the arrest was effectuated in retaliation for protected conduct. 587 U.S. at 405. *Allen* allows an officer with reasonable suspicion of criminal activity to briefly detain an individual, even if the detainment appears to have been motivated by the individual's First Amendment activities. 815 F.3d at 244–45. The logic underpinning these holdings is straightforward: if there exists an objective justification to detain or arrest an individual, that justification is sufficient to defeat an allegation that the individual's seizure was retaliatory.

But those cases do not suggest that when a lawful justification for seizing an individual is present, a lawful justification for seizing that individual's personal property simultaneously exists. Nor is that a logical conclusion to reach—especially in the instant case, where the only cognizable justification for seizing the Degenhardts' vehicle was an unconstitutional one: to punish the brothers for their disrespectful speech. *See Ante* at 10–13 (rejecting the officers' argument that the community caretaker exception justified impoundment). That justification is plainly unconstitutional, and no reasonable officer would find it permissible. *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021); *see also Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020) (denying qualified immunity where "no reasonable . . . officer could have concluded" his actions were legal).

Though not dispositive to the above analysis, it is also striking that the unlawful acts that provided probable cause to arrest the Degenhardts—underage possession of alcohol and illegal possession of a vaping device—have scant relation to the property seized—the brothers' Dodge Challenger. This disconnect makes the vehicle's seizure all the more egregious, the retaliatory nature of the officers' alleged actions all the more apparent, and the illegality of the impoundment all the more plain. Simply stated, while probable cause allows police to arrest an individual, it does not, on its own, provide free rein to seize that individual's personal property.

At this early stage, the Degenhardts have adequately stated a claim for a violation of their First Amendment rights as a result of their vehicle's seizure and impoundment. The recent caselaw that the majority identifies does not cast any uncertainty over the unconstitutionality of the officers' alleged actions. Accordingly, I respectfully dissent from that portion of the majority's opinion.