# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 19, 2025

Lyle W. Cayce
Clerk

—————————

No. 24-10455

—————————

Christopher Rusanowsky,

*Plaintiff—Appellant*,

*versus*

The City of Dallas; Sergeant Roger A. Rudloff,
*individually and in his official capacity as a Dallas Police Department Police Officer*,

*Defendants—Appellees*.

—————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-1132

—————————————————————

Before Richman, Willett, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Christopher Rusanowsky, a photojournalist, sued the City of Dallas and Police Sergeant Roger Rudloff for violations of his constitutional rights related to his arrest at a protest. The district court granted summary judgment to Rudloff and the City on all claims. We AFFIRM.

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

I

Christopher Rusanowsky is a photojournalist. He publishes his work through ZUMA Press, a professional photography service that pays him royalties for his photographs. On May 30, 2020, Rusanowsky ventured into downtown Dallas to photograph interactions between police officers and those protesting the death of George Floyd. He brought his press badge with him so he would not be mistaken for a protestor.

While following the protestors that evening, Rusanowsky noticed a group peel off towards Interstate Highway 35. He followed. When the group began climbing onto the interstate, Rusanowsky stood against the outside of the barrier that separated the embankment from the shoulder of the highway. Soon, protestors began crowding around Rusanowsky, and he became uncomfortable. Fearing a potentially dangerous situation, Rusanowsky stepped over the barrier onto the right shoulder of the highway. He walked with the flow of traffic until he could safely exit the shoulder and get back onto the grass. In total, Rusanowsky was on the shoulder for less than one minute.

Rusanowsky states that he did not see any law enforcement while he was on the highway. Only once he and the protestors reached a grassy area near the road did police appear.

Rusanowsky watched a group of protestors help an injured woman. Soon, Dallas Police Sergeant Roger Rudloff appeared and "laid his hands on one of the men." Rudloff then shot another protestor with a PepperBall gun at point-blank range, ordered another woman to get on the ground, and forced another protestor to the ground. The entire time, Rusanowsky stood ten feet away and photographed Rudloff's actions.

Eventually, Sergeant Rudloff noticed Rusanowsky, who showed Rudloff his press badge and tried to explain he was a photojournalist, to which

No. 24-10455

Rudloff said "yeah, yeah, press, press . . . you're going to jail."[1] Rudloff grabbed Rusanowsky by his shirt and threw him to the ground. Corporal David Pillar then handcuffed him.[2] Neither officer informed Rusanowsky of the reason for his arrest. Sergeant Rudloff never interacted with Rusanowsky again, nor did he fill out any arrest reports.

Sergeant Rudloff provides a slightly different account of events. Rudloff claims that after he and his fellow officers observed a group of protestors coming from the highway, Dallas Police Department (DPD) instructed them to "round those folks up." While Rudloff agrees that he shot his PepperBall launcher at a female protestor and struck a protestor with his knee, he asserts that he did not interact with Rusanowsky until *after* Pillar had arrested him. This account is contradicted by photographs showing Rudloff speaking with Rusanowsky and grabbing his shirt before the arrest. The accounts of Pillar and Officer Russell Barrett—two other officers at the scene—also differ from Rudloff's description of events. Specifically, their accounts diverge as to when PepperBall blasters were used, when protestors reached certain locations, and when each protestor was arrested.

After spending 26 hours in a jail cell, Rusanowsky was informed he was arrested for obstructing a highway under Texas Penal Code §42.03.[3] The charges were later dropped.

---

[1] Rudloff states that after Rusanowsky was arrested by Corporal David Pillar, Rusanowsky said he was a member of the press, at which point Rudloff told him he "still had no right to be on the freeway."

[2] Pillar's statement confirms that he formally arrested Rusanowsky.

[3] The officer who provided the information for the warrant affidavit was not at the scene of Rusanowsky's arrest; he was over a mile away and described events that happened one hour after Rusanowsky's detainment.

Rusanowsky sued the City of Dallas and Sergeant Rudloff in his individual and official capacity for deprivation of his civil rights. Specifically, Rusanowsky claimed that Rudloff arrested him without probable cause and in retaliation of his First Amendment "right to record the police in the exercise of their official duties." His municipal liability claims against the City of Dallas alleged a failure to train and supervise Rudloff.

The district court adopted an expedited schedule to determine Rudloff's qualified immunity. After limited discovery, the parties filed cross-motions for summary judgment. The district court found that probable cause existed for Rusanowsky's arrest and that the arrest was not retaliatory. Accordingly, Rudloff was entitled to qualified immunity. The court granted his motion for summary judgment and denied Rusanowsky's cross-motion.[4] Rusanowsky timely appealed.

II

We typically review summary judgment *de novo*, "viewing the evidence in the light most favorable to the non-moving party."[5] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

But our approach changes in qualified-immunity cases.[6] A public official's "good-faith assertion of qualified immunity," "alters the usual

---

[4] In a later motion for summary judgment, the City of Dallas moved to have the municipal liability claims against it dismissed. Rusanowsky did not contest that the court's prior ruling compelled summary judgment in favor of the City. Therefore, the court granted the City's motion and dismissed Rusanowsky's claims.

[5] *Ramirez v. Killian*, 113 F.4th 415, 421 (5th Cir. 2024) (citing *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009)).

[6] *Bailey v. Ramos*, 125 F.4th 667, 674 (5th Cir. 2025).

No. 24-10455

summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available."[7] Thus, we employ a two-step inquiry: "First, we ask whether the facts alleged, viewed 'in the light most favorable to the party asserting the injury,' establish that 'the officer's conduct violated a constitutional right'"; and second, the we ask "whether the right was clearly established."[8] In analyzing the plaintiff's claims, we draw all inferences in the plaintiff's favor.[9]

### III

The Fourth Amendment governs Rusanowsky's claim for unlawful arrest. "A warrantless arrest must be based on 'probable cause.'"[10] "The question of probable cause is a mixed question of law and of fact. Whether the circumstances alleged to show it probable are true, and existed, is a matter of fact; but whether, supposing them to be true, they amount to a probable cause, is a question of law."[11]

The test for probable cause is an objective one: We "must look to the totality of the circumstances and decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer

---

[7] *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 329–30 (5th Cir. 2020) (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016)) (cleaned up).

[8] *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (quoting *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019) (internal citations omitted)).

[9] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

[10] *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000) (per curiam). *See also Brown v. Lyford*, 243 F.3d 185, 191 (5th Cir. 2001) ("[I]f a reasonable officer could have concluded that there was probable cause upon the facts then available to him, qualified immunity will apply.").

[11] *Reitz v. Woods*, 85 F.4th 780, 788 (5th Cir. 2023) (quoting *Stewart v. Sonneborn*, 98 U.S. 187, 194 (1878)).

demonstrate a probability or substantial chance of criminal activity."[12] If we find probable cause, then the false arrest claim fails.[13]

Rusanowsky contends that Sergeant Rudloff lacked probable cause to arrest him. Rudloff counters that he had probable cause to arrest Rusanowsky for walking on the *right* shoulder of the highway when Texas Transportation Code § 552.006(b) directs pedestrians to walk along the *left* shoulder.

At the time of Rusanowsky's arrest, the Code stated that "[i]f a sidewalk is not provided, a pedestrian walking along and on a highway shall if possible walk on: (1) the left side of the roadway; or (2) the shoulder of the highway facing oncoming traffic."[14] To do otherwise is a misdemeanor.[15]

Rusanowsky claims there is a dispute of fact as to whether it was "possible" to walk on the left shoulder of the highway, which means there is a dispute of fact about the lawfulness of his arrest—that is, if Rusanowsky could not reach the left shoulder safely, then he was not committing a misdemeanor by walking on the right shoulder. Rudloff argues that because the facts indisputably show "Rusanowsky on and near a freeway while violent protestors were obstructing the freeway," he had probable cause to arrest Rusanowsky.

But this disagreement misses the point; it is unnecessary to analyze whether Rusanowsky *could have* crossed the highway to determine whether probable cause existed at the time of his arrest.

---

[12] *Id.* at 790–91 (quotation marks and citation omitted).

[13] *See Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995).

[14] Texas Transportation Code § 552.006(b).

[15] Texas Transportation Code § 542.301(b).

No. 24-10455

Our precedent confirms as much. In *Martinez v. City of Rosenberg,* we found probable cause when a police officer arrested a man walking on the righthand side of the road in violation of the Texas Transportation Code.[16] Notably absent from that opinion—and the district court opinion below—was any discussion of whether the arrestee *could* have crossed to the other side.[17] Whether the pedestrian could have crossed the road was not a prerequisite for probable cause; while it may determine the arrestee's *guilt*, it did not affect the probable-cause analysis. After all, a police officer has probable cause to arrest a man who shoots another man in an alley, even if it later turns out the shooting was in self-defense.[18]

---

[16] *Martinez v. City of Rosenberg*, 123 F.4th 285, 290 (5th Cir. 2024) ("Officer Cantu had probable cause to arrest Martinez because the dash camera footage indisputably captured Martinez walking on the righthand side of the road for several seconds, in violation of the Texas Transportation Code.").

[17] *See id.* at 290; *see also Martinez v. City of Rosenberg*, No. 4:21-CV-00432, 2023 WL 7290471, at *3 (S.D. Tex. Sept. 27, 2023), *aff'd*, 123 F.4th 285 (5th Cir. 2024). There are also multiple Texas state court cases that find probable cause without considering whether it was possible for the pedestrian to cross to the other side of the road; if the pedestrian was arrested while walking on the left shoulder with the flow of traffic, the arrest was lawful. *See Briseno v. State*, No. 04-19-00042-CR, 2020 WL 1866276, at *4 (Tex. App.—San Antonio Apr. 15, 2020, no pet.) (mem. op.) ("Officer Bortel saw Briseno commit the traffic offense of walking on the wrong side of the road in violation of section 552.006 of the Transportation Code. Thus, at the onset of the encounter, Officer Bortel not only had reasonable suspicion to detain Briseno, but he also had a basis on which to arrest her."); *Martinez-Cornelio v. State*, No. 06-19-00061-CR, 2019 WL 4891710, at *4 (Tex. App.—Texarkana Oct. 4, 2019, pet. ref'd) (mem. op.); *Agnew v. State*, No. 06-17-00160-CR, 2018 WL 636195, at *2–3 (Tex. App.—Texarkana Jan. 31, 2018, no pet.) (mem. op.); *McBride v. State*, 359 S.W.3d 683, 693 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *State v. Patterson*, 291 S.W.3d 121, 122–23 (Tex. App.—Amarillo 2009, no pet.).

[18] *Mangieri v. Clifton*, 29 F.3d 1012, 1017 (5th Cir. 1994) ("Police officers who 'reasonably but mistakenly conclude that probable cause is present' are entitled to qualified immunity. 'The qualified immunity standard gives ample room for mistaken judgments' by protecting all but the plainly incompetent or those who knowingly violate the law.'" (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (cleaned up)).

No. 24-10455

Like in *Martinez*, there is indisputable proof that Rusanowsky walked along the right shoulder of the highway—he admits doing so. All Rudloff needed to see was Rusanowsky walking on the right side of the road with the flow of traffic. After such observations, a reasonable officer in Rudloff's position could decide the facts demonstrated a probability that Rusanowsky was committing a misdemeanor. The fact that Rudloff *may* have ultimately been mistaken about Rusanowsky's ability to cross to the lefthand side does not indicate a lack of probable cause at the time of his arrest.[19]

Rusanowsky next argues that Rudloff did not see him commit the misdemeanor, as he "did not observe any law enforcement nearby." But just because Rusanowsky did not see the officers does not mean they were unable to see him. And the record contains multiple statements by the officers explaining that they observed Rusanowsky on the highway. Rusanowsky asserts that there are "significant material factual disputes between Rusanowsky, Rudloff, and Rudloff's fellow officers," which undermines their credibility. This concern is valid—the officers provide different descriptions of the events surrounding the protest. But, the officers agree that they saw Rusanowsky *walking down the highway* with the protestors as they blocked traffic and harassed drivers.[20] While Rusanowsky's mere presence at the scene is insufficient to provide probable cause,[21] the statements from the officers bolsters the reasonableness of Rudloff's perception: That, under the

---

[19] *Carthon v. Prator*, 408 F. App'x 779, 782 (5th Cir. 2010) ("An arresting officer who 'reasonably but mistakenly concludes' that probable cause exists is entitled to qualified immunity for the arrest." (citation omitted)).

[20] Rusanowsky's photographs confirm that the protestors around him were obstructing traffic by walking in front of cars on the highway.

[21] *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).

No. 24-10455

"totality of circumstances," it was probable that Rusanowsky was walking on the wrong side of the highway, with the flow of traffic, against Texas law.[22]

For these reasons, we conclude the district court did not err in finding Rusanowsky failed to show a genuine dispute of fact as to whether probable cause existed at the time of his arrest.

## IV

To survive summary judgment on his retaliation claim, Rusanowsky must show there is a genuine dispute of material fact that "(1) [he was] engaged in constitutionally protected activity, (2) the defendant['s] actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant['s] adverse actions were substantially motivated against the plaintiff['s] exercise of constitutionally protected conduct."[23] "A retaliation claim is only available 'when non-retaliatory grounds are in fact insufficient to provoke' the arrest, meaning that the officer's subjective motivation must be the but-for cause of the adverse action against the plaintiff."[24] At the summary judgment stage, the non-moving party doesn't have to provide direct evidence; circumstantial evidence is equally probative.[25]

---

[22] *Grisham v. Valenciano*, 93 F.4th 903, 910 (5th Cir. 2024).

[23] *Bailey*, 125 F.4th at 684–85 (5th Cir. 2025) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)) (cleaned up).

[24] *Id.* at 685 (citing *Degenhardt v. Bintliff*, 117 F.4th 747, 758 (5th Cir. 2024)).

[25] *Id.*

It is undisputed that Rusanowsky's photography of police qualifies as constitutionally protected activity.[26] And Rusanowsky's arrest would clearly chill his desire to take photographs of police interactions.[27]

Our inquiry thus focuses on the third prong—whether Sergeant Rudloff's adverse actions were substantially motivated against Rusanowsky's constitutionally protected conduct.[28]

Relying on circumstantial evidence, Rusanowsky asserts that Rudloff arrested him only after he photographed Rudloff arresting protestors. He also points out that even after he identified himself as a member of the press, Rudloff forced him onto the ground. While true, neither of these assertions meet the burden for unconstitutional motive. Yes, Rudloff arrested Rusanowsky after he took pictures, but by Rusanowsky's own declaration, Rudloff did not arrest the other photographers at the scene. And identifying himself as "press" does nothing to erase the fact that Rudloff had probable cause to arrest Rusanowsky for a misdemeanor—being a member of the press does not provide a "get out of jail free" card.

Further undermining Rusanowsky's claim is his statement that he witnessed Rudloff arresting other protestors in the area. In fact, Rusanowsky seems to describe Rudloff's indiscriminate force in arresting nearby individuals: "Everything I observed unfolded in lightning-fast pace . . . I watched on with my camera as Sgt. Rudloff initiated the arrests of five people, shot one with his pepperball gun, and kneed and roughly handled another." These statements from Rusanowsky's declaration show that Rudloff focused

---

[26] *Turner v. Lieutenant Driver*, 848 F.3d 678, 687 (5th Cir. 2017).

[27] *See Bailey*, 125 F.4th at 685.

[28] *Id.* at 684–85 (quoting *Keenan*, 290 F.3d at 258).

on arresting people that came from the highway, not just those that photographed the police.

Rusanowsky has not provided evidence that indicates he was singled out and arrested for taking photographs of the police. Accordingly, we agree with the district court that Rusanowsky failed to show a material dispute of fact as to Rudloff's allegedly retaliatory motive.

V

It is well established that to recover against a municipality under § 1983, a plaintiff must "allege and establish that he sustained a deprivation of a constitutional or other federally protected right because of some official policy, practice, or custom of that governmental entity."[29] "[W]ithout a predicate constitutional violation, there can be no *Monell* liability."[30]

Because Sergeant Rudloff is entitled to qualified immunity, Rusanowsky cannot show he suffered constitutional violations from his arrest. Therefore, the municipal liability claims against the City of Dallas cannot proceed.

VI

Rusanowsky failed to raise genuine disputes of fact as to whether Sergeant Rudloff was entitled to qualified immunity. Because Rudloff had probable cause to arrest Rusanowsky, and because the arrest was not retaliatory, the district court correctly granted summary judgment for Rudloff. For these reasons, we AFFIRM.

---

[29] *Grisham v. Valenciano*, 93 F.4th 903, 912 (5th Cir. 2024) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94, 98 (1978)).

[30] *Loftin v. City of Prentiss,* 33 F.4th 774, 783 (5th Cir. 2022).